GANN et al. v. NORTHEASTERN R. CO. et al.

(Circuit Court, N. D. Georgia. October 5, 1891.)

REMOVAL OF CAUSES—LOCAL PREJUDICE—CITIZENSHIP.
Under the corrected judiciary act of March 3, 1887, (24 Stat. 552,) a suit cannot be removed from a state to a federal court on the ground of local prejudice, when plaintiffs are not all citizens of the state in which the suit is brought, and are yet jointly interested in the cause of action against the nonresident defendant who applies for removal. Young v. Parker, 10 Sup. Ct. Rep. 75, 132 U. S. 267, followed.

In Equity. On motion to remand to the state court. Granted.

Lumpkin & Burnett, T. W. Rucker, and J. H. Lumpkin, for complainants.

Barrow & Thomas, for defendants.

Before LAMAR, Circuit Justice, and NEWMAN, District Judge.

LAMAR, Circuit Justice. This is a motion made on behalf of the plaintiffs in the above-entitled case, to remand this cause to the superior court of Clarke county, Ga., in which it was originally brought, on the ground that this court has no jurisdiction to hear and determine the issues involved in it. The case is this:

The complainants, who are quite numerous, were stockholders in the Northeastern Railroad Company, a Georgia corporation, and, with but four exceptions, were citizens of Georgia. One of these exceptions was a citizen of New Jersey; another, a citizen of Alabama; a third, a citizen of Virginia; and the fourth, who is now deceased, was a citizen of Maryland. The suit was brought against the said Northeastern Railroad Company, the Richmond & Danville Railroad Company, and the Richmond & West Point Terminal Company, all Virginia corporations, and the Central Trust Company of New York. The bill filed in the state court, among other things, contained, substantially, the following material allegations: In 1870 the Northeastern Railroad Company was chartered by the legislature of Georgia for the purpose of building a railroad from Athens to or near Clayton, in the northeastern corner of the state, so as to connect with other lines, making, with its connections, a through line to the west, and a competing line to the north and east; and its stock was subscribed upon the understanding and with the purpose that the road should be built in accordance with the plan expressed in its charter, the city of Athens being a large subscriber of the stock. At that time there was a railroad, which had been in operation for a number of years, running from Atlanta northeast to Charlotte, known as the "Air-Line Road." The Northeastern Company built its line, under its charter, to where it intersected the Air-Line road, at Lula, and graded a considerable portion of its right of way beyond that point; the company all that time, and up to 1881, being in a prosperous and solvent condition.

About the year 1881 the Richmond & Danville Company obtained control of the Air-Line road, which, with its other connections, gave that company a through line of road from Atlanta to the north

v.57 F.no.4—27

and east, and, by branches in the Carolinas, a through line to the west, through Tennessee. The completion of the Northeastern road, in accordance with the provisions of its charter, would have made that road a competing through line to the north and east with the Richmond & Danville road. Accordingly, as soon as it acquired possession and control of the Air-Line road, the Richmond & Danville Company and its confederates began a systematic scheme and effort to destroy this proposed competing line, and to render the Northeastern road a mere feeder of its main lines of road. For this purpose the Richmond & Danville Company procured a controlling influence in the Northeastern Company by purchasing a majority of the stock of the latter company, at the same time representing to the parties from whom it purchased said stock, and to orators, that it would complete the Northeastern road according to its charter purposes. This transfer of stock was effected through the Terminal Company, which was a nominal party, only, in the transaction, and was and is, in interest, practically the same as the Richmond & Danville Company; the latter company being incapacitated, under the laws of Georgia, to make such a contract. Having thus obtained control of the Northeastern road, the Richmond & Danville Company installed its own agents as officers of that road, and made rates to suit its own will in the premises, thus making the Northeastern road a party to its unlawful schemes, although a large number of its stockholders and some of its directors were opposed to such action. In November, 1881, while the Northeastern road was thus controlled, it bonded itself to the amount of $1,140,000, and to secure the same gave a deed of trust in favor of the Central Trust Company of New York, covering all the property of the road, both present and prospective. These bonds were for the pretended purpose of completing the road to Clayton, and, while their issue was under consideration, such was said by the officers of the company to be their purpose, but they were never applied to any such purpose. The Terminal Company took possession of $315,000 worth of said bonds, to which it was never entitled, as they were taken and issued fraudulently, and their proceeds were never applied to the purpose for which they had been ostensibly issued. There were other averments in the bill respecting the bad faith and alleged fraudulent practices of the defendant companies, which need not be set forth in detail, in connection with this motion, such as the piling up of a large indebtedness against the Northeastern Railroad; the breaking of its line of road into two parts; the transfer of a part of it without consideration; the leasing of another portion of it to the Richmond & Danville Company, by which the latter company was enabled to and did make rates of freight to suit its own pleasure, —all of which were alleged to be violative of the rights of the complainants in the premises, and illegal under the charter of the Northeastern road; and there was a prayer for specific and general relief, in accordance with the nature of the claims against the respective defendants.

After certain other steps in the progress of the case had been gone through with, none of which are material to this consideration, the Terminal Company made an application to remove the cause to this court, under the prejudice and local influence clause of the act of March 3, 1887, (24 Stat. 552,) as corrected by the act of August 13, 1888, (25 Stat. 433,) accompanying the application with a proper bond, and an affidavit of the vice president of the company, saying that, from prejudice and local influence, it would not be able to obtain justice in any of the courts of the state in which the suit could be tried.

Upon the filing of these papers the district judge, acting in the circuit court, entered an order that the suit be removed, as prayed for, and the removal was accordingly effected. Shortly afterwards this motion to remand was made. This motion, though subdivided into seven different parts, may properly be discussed under two heads, or more properly, perhaps, may be said to rest on but two general grounds: First, the showing made to the district judge under the prejudice and local influence clause of the statute was insufficient to warrant the removal to this court; and, second, even admitting that such showing was sufficient, the citizenship of the parties was such that a removal was not authorized.

Waiving for the present, at least, a discussion of the first ground of the motion, as above arranged, attention will be directed to the second ground of the motion to remand, because if this ground be tenable the motion must be sustained, irrespective of the showing made to the district judge by the affidavit aforesaid. Adverting to the citizenship of the various parties connected with this controversy, as stated in the beginning of this opinion, it is observed that the plaintiffs, with three exceptions necessary to mention, are citizens of Georgia, and, of those exceptions, one is a citizen of New Jersey, another of Alabama, and the third of Virginia, while the respondents are citizens, one of Georgia, two of Virginia, and the fourth of New York. The controversy, while perhaps separable so far as the plaintiffs are concerned, inasmuch as each one is a stockholder in the Georgia corporation, and would probably have the right to bring a separate suit to enforce and protect his rights as such stockholder, yet the nature of the case is such that the suit cannot be split up, as respects the respondents, because the charge against all of them, except the trust company, is that of colluding and conspiring to wreck the Georgia corporation, and depreciate its stock held by the plaintiffs, and also to divert the proceedings relative to the construction and operation of the road of that corporation from the purposes indicated in its charter. This is the gravamen of the bill. It is therefore impossible that the suit could proceed against any one of these defendants without necessarily bringing in the others,—not for convenience, merely, but in order that a full, fair, and judicial investigation may be had of the charges of fraud and collusion on the part of the three defendants, which are set out with much detail in the bill. This

being true, was the suit legally removable under the section of the
act of March 3, 1887, (24 Stat. 552,) as amended and corrected by
the act of August 13, 1888, (25 Stat. 433,) because of the diverse
citizenship of the parties? We have more than once, in this court,
following the construction generally given by the circuit courts
of the United States, decided that any one defendant, being a
citizen of another state than that in which the suit is brought,
who is jointly sued with other defendants, citizens of the same
state as the plaintiff, may remove the suit to the circuit court
upon making it appear to the court that, upon the ground of local
prejudice and influence, he cannot obtain justice in the state court.
In the decisions referred to, we held that this court would in
these particular cases take cognizance of a suit by removal, of
which it could not have taken original jurisdiction. We do not
perceive any feature in this case which calls for a reconsideration
of the correctness of those decisions. The question which it pre-
sents is essentially different. That question is whether a suit
pending in a state court may be removed by defendant to the fed-
eral court, because of prejudice and local influence, when the plain-
tiffs are not all citizens of the state in which suit is brought,
and are yet jointly concerned, according to the allegations of the bill,
in the cause of action against the nonresident defendant who ap-
plies for the removal. In order to answer this question, it becomes
necessary to examine the act of March 3, 1887, (24 Stat. 552,) as
amended and corrected by the act of August 13, 1888, (25 Stat.
433,) in the light of the construction placed by the supreme court
on the language now under consideration. That act, after pro-
viding, substantially, that the circuit court shall have original
cognizance of actions between citizens of different states; that
no suit shall be brought by original process in any district other
than that whereof the defendant is an inhabitant, but, where ju-
risdiction is founded merely on diverse citizenship, suit may be
brought in the district of the residence of either party,—provides
for bringing a party into the circuit court by removal, as follows:

"When a suit is now pending or may be hereafter brought in any state
court in which there is a controversy between a citizen of the state in which
the suit is brought and a citizen of another state, any defendant being
such citizen of another state may remove such suit into the circuit court
of the United States."

Although the statutes modifying the jurisdiction of the circuit
court with regard to the amount in controversy, and in some other
respects, have been numerous, the language characterizing the
nature of removable suits has been retained, in its essential terms,
in all of them, including the act of 1887, as amended by the act
of 1888, which we are now considering. In the case of Coal Co.
v. Blatchford, 11 Wall. 172, Mr. Justice Field, speaking of similar
language in the judiciary act of 1789, vesting in the circuit courts
original jurisdiction of suits of a civil nature, thus refers to the
third class of cases, to wit, when the suit is between a citizen of
the state where the suit is brought and a citizen of another state:

"In the last two classes the designation of the party plaintiff or defendant is in the singular number, but the designation is intended to embrace all the persons who are on one side, however numerous; so that each distinct interest must be represented by persons, all of whom are entitled to sue, or are liable to be sued, in the federal courts."

In the case of Young v. Parker, 132 U. S. 267, 10 Sup. Ct. Rep. 75, the court construing the language in Rev. St. § 639, in respect to a removal of a suit between a citizen of a state in which it is brought and a citizen of another state, on the ground of local prejudice, which was the same as that in the act of 1887, the court decided that:

"It is essential, in order to such removal, where there are several plaintiffs or several defendants, that all the necessary parties on one side must be citizens of the state where the suit is brought, and all on the other side must be citizens of another state or states."

We think this decision conclusive upon the question before us. This case is not a controversy in which all the necessary parties on one side (complainants) are citizens of the state in which the suit is brought, and a citizen of another state; and as it does not appear from the record in this case that diverse citizenship existed between all the complainants and all the defendants at the commencement of the suit, and also at the time the petition was filed for removal, the cause should be remanded to the state court.

While preparing this opinion, our attention is called to a recent decision by Mr. Chief Justice Fuller, in the United States circuit court of Virginia, on a motion to remand in a case somewhat similar to this, (Wilder v. Iron Co., 46 Fed. Rep. 676.) In that case a bill was filed in a Virginia state court, by certain stockholders and creditors, against a New Jersey corporation and certain Virginia corporations, and also certain individuals, as codefendants. The stockholders, holding different kinds of stock in the New Jersey corporation, and certain creditors of that corporation, brought the bill jointly in behalf of themselves and all of the stockholders and creditors who might join with them, except some stockholders who were named as defendants. Some of the complainants were citizens of Virginia, and some were citizens of other states. Application for removal was made by the nonresident defendant corporation on the ground of local prejudice, etc. A motion to remand was filed by plaintiff. The court held that as the suit was brought jointly, and properly so, and as the complainants were not all citizens of the state in which the suit was brought, the case must be remanded. The learned chief justice said:

"But the difficulty of this order of removal is that there is not a controversy, within the intent and meaning of the act, between citizens of the state in which the suit is brought and a citizen of another state. Any defendant, being such citizen of another state, may remove; but it is essential that a controversy should exist between such citizen of another state and citizens of the state in which suit is brought."

Quoting the language of the act of 1887, which we have given above, he says:

"The language of the act of 1867, in describing the suit, is the same; and, as to the act of 1867, it has been uniformly held that all the persons on one side must be citizens of the state in which the suit is brought, and all those on the other citizens of some other state;" citing Young v. Parker, supra. "Granted that the area of removability was enlarged by the act of 1887, inasmuch as any of the defendants may remove, still the rule under the act of 1867 applies,—that, when the citizenship on the plaintiffs' side of the suit is such as to prevent the removal under that act, it is equally effective to defeat the right under the act of 1887. The suit was brought in Virginia, and complainants are only in part citizens of that state. The petition admits this. * * * Upon the face of the bill, there is no controversy other than as stated, and this is fatal to the application."

We do not think that, in the light of the construction of this language of section 639, Rev. St., by the supreme court, in the case of Young v. Parker, supra, applied by Mr. Chief Justice Fuller, in the case just cited, to the same language in the. act of 1887, we are at liberty to give that language a different construction. There are perhaps some other decisions in the United States courts not in harmony with the foregoing views, but they do not meet our concurrence.

This disposition of the case renders it unnecessary to discuss the other ground of the motion. The requisite citizenship of the parties, to give the right of removal, does not appear, and therefore the motion to remand must be and is sustained. It is so ordered.

NEWMAN, District Judge, (concurring.) In concurring in the conclusion of Justice Lamar that this case must be remanded I desire simply to say that in the case of Haire v. Railroad Co., 57 Fed. Rep. 321, I held, with concurrence of Circuit Judge Pardee, in a case of removal on the ground of prejudice and local influence, where there were three defendants, that the fact that two of the defendants were citizens and residents of this state and district would not prevent removal of the case to the circuit court of the United States by the nonresident defendant. The decision in that case was based especially and particularly on the words "any defendant" in the fourth clause of section 2 of the act of 1887. I do not understand the question there decided to be involved here. I concur in the decision in this case.